**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4703-13T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALEEM MALLARD, a/k/a
ALIMEEN WATSON,

    Defendant-Appellant.

_____

Submitted January 11, 2017 — Decided May 15, 2017

Before Judges Fuentes, Simonelli and Carroll.

On appeal from the Superior Court of New
Jersey, Law Division, Hudson County,
Indictment No. 07-09-1501.

Joseph E. Krakora, Public Defender, attorney
for appellant (Alison Perrone, Designated
Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor,
attorney for respondent (Eric P. Knowles,
Assistant Prosecutor, on the brief).

PER CURIAM

    Following a jury trial, defendant Aleem Mallard was convicted

of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-

5(b), and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a), and

acquitted of first-degree robbery, N.J.S.A. 2C:15-1, and fourth-degree possession of an imitation firearm, N.J.S.A. 2C:39-4(e). After waiving his right to a jury trial, the trial judge found defendant guilty of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b). On July 30, 2009, the judge sentenced defendant to an extended term of seventeen years with an eight-and-one-half year period of parole ineligibility on the certain persons conviction, a concurrent five years on the unlawful possession of a weapon conviction, and a concurrent eighteen months on the resisting arrest conviction.

On appeal, defendant raises the following contentions:

POINT I

THE TRIAL COURT'S DECISION DENYING DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE SEIZED FROM THE TRUNK OF THE CAR MUST BE REVERSED.

POINT II

SINCE THE IDENTIFICATION INSTRUCTION IMPROPERLY EMPHASIZED THE STATE'S EVIDENCE AGAINST DEFENDANT WITHOUT ANY MENTION OF DEFENSE EVIDENCE OF MISIDENTIFICATION, DEFENDANT'S CONVICTIONS MUST BE REVERSED AND THE MATTER REMANDED FOR A NEW TRIAL. (Not Raised Below).

POINT III

SINCE THE TRIAL COURT REFUSED TO INSTRUCT THE JURY ON FALSE-IN-ONE, FALSE-IN-ALL, AS REQUESTED BY COUNSEL, THIS COURT SHOULD REVERSE DEFENDANT'S CONVICTIONS AND REMAND THE MATTER FOR A NEW TRIAL.

A-4703-13T3

<u>POINT IV</u>

THE COURT ERRED IN IMPOSING A SEVENTEEN-YEAR TERM WITH EIGHT AND A HALF YEARS OF PAROLE INELIGIBILITY BECAUSE A QUALITATIVE WEIGHING OF THE RELEVANT FACTORS DOES NOT SUPPORT SUCH A SENTENCE. ADDITIONALLY, THE COURT ERRED IN BASING ITS SENTENCE ON CONDUCT FOR WHICH DEFENDANT WAS FOUND NOT GUILTY.

We have considered defendant's contentions in Points II and III in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2). However, we make the following brief comments.

There was no plain error in the identification charge. <u>State v. Funderburg</u>, 225 <u>N.J.</u> 66, 79 (2016). The identification charge the judge gave mirrored the Model Jury Charge on identification in effect at the time of defendant's trial. The charge did not emphasize evidence favorable to the State, and the judge did not comment on the State's evidence or strength of the State's case or bolster the credibility of any identification witness or the reliability of the identification procedures used. <u>See</u> <u>State v. Robinson</u>, 165 <u>N.J.</u> 32, 45 (2000).

The judge did not abuse her discretion in declining to give a false-in-one, false-in-all charge. <u>See</u> <u>State v. Ernst</u>, 32 <u>N.J.</u> 567, 583-84 (1960), <u>cert. denied</u>, 364 <u>U.S.</u> 943, 81 <u>S. Ct.</u> 464, 5 <u>L. Ed.</u> 2d 374 (1961). There was no evidence that a witness had

willfully or knowingly testified falsely as to a material fact at issue, and defendant did not argue the contrary. Thus, there was no basis for a false-in-one, false-in-all charge. See ibid. (noting that a false-in-one, false-in-all charge requires evidence that witness knowingly and willfully testified falsely as to a material fact).

## I.

The following facts are relevant to defendant's argument in Point I regarding the denial of his motion to suppress a handgun found in the trunk of his car. Detective Joseph Walsh from the City of Jersey City Police Department testified at the suppression hearing that at approximately 8:00 p.m. on April 17, 2007, he responded to the scene of an armed robbery at a bodega on Logan Avenue. A witness, F.F.,[1] told Walsh that he called the police after seeing two males acting suspiciously outside his home before the robbery occurred. The witness also said that he saw the men drive away in a green car, and he obtained the license plate number and gave it to the dispatcher.

Walsh obtained information of the green car's whereabouts and was transporting F.F. there in an unmarked patrol car to see if F.F. could identify the car. While en route, they saw the car

---

[1] We use initials to protect the identity of the witness.

drive by on Garfield Avenue. Walsh notified the dispatcher, requested assistance, and followed the car without activating his siren or lights.

Walsh saw the driver of the green car, later identified as defendant, drive down Westside Avenue at a speed of between forty and forty-five miles per hour in a twenty-five-mile-per-hour zone. Defendant attempted to turn left on Fisk Avenue, but there were marked police cars and emergency service units with lights activated travelling up Fisk Avenue. Defendant then quickly made a sharp right turn back onto Westside Avenue, but did not have enough room and struck a large metal pole. Defendant and the front seat passenger, later identified as co-defendant Malik Flowers, exited the car and ran. Walsh exited his patrol car, notified dispatch of the crash, and chased and apprehended Flowers. Other police officers chased defendant and apprehended him.

When Walsh returned to the scene of the crash, he saw that the trunk of the car was open. He did not see how the trunk opened, but believed it had opened from the force of the crash. Police Officer Mark Hennessey, who had responded to the scene of the crash, advised Walsh that he had recovered in plain view a .40 caliber handgun in the open trunk of defendant's car.

Hennessey testified that he was traveling in the area where defendant's car was traveling and turned around after the car

5

passed his patrol car. He arrived at the scene of the crash thirty seconds after the impact and saw that the front doors and trunk of the car were open. There was no one else in the area when he arrived, and he was the only one who had approached the car. He exited his patrol car, went to the driver's door, and looked into the car's interior to see if there was anyone inside. Knowing there had been an armed robbery, he also looked to see if there was a weapon in the interior. He then walked to the open trunk, where he saw clothing, a blanket, and the butt of a black handgun sticking out from under the blanket in plain view.

Defendant's expert forensic engineer, Charles Edwin Neu, testified that he inspected defendant's car and found it sustained damage to the right front quarter panel and door, the passenger side airbag had deployed, and the windshield by the passenger side was fractured from an impact from the inside. He also inspected the trunk and found that the trunk and trunk lock were undamaged. He opined there was no side force to the car for an object in the trunk to activate the emergency release lever, and none of the soft items in the trunk would have been likely to trip the latch or force the trunk to open. He concluded that the trunk "did not open by itself in the collision." He admitted, however, that given the vehicle's maneuvers and crashing at a high rate of speed,

it was possible a handgun in the trunk could have hit the latch and opened the trunk.

The judge held that the warrantless search of the trunk was valid under the plain view exception. The judge found credible Hennessey's testimony that the trunk was open when he arrived at the crash scene, and that he saw the butt of the gun in plain view. The judge was not persuaded by Neu's testimony that the crash could not have caused the trunk to open. The judge also noted that Neu had "grudgingly" admitted that given the vehicle's maneuvers and crash at a high rate of speed, it was possible that a handgun in the trunk could have hit the latch and opened the trunk.

The judge also held that the warrantless search was valid under the inevitable discovery exception. The judge found that defendant's car was disabled and would definitely have been towed and inventoried, and the State would have pursued established investigatory procedures that would have inevitably resulted in the discovery of the gun.

Defendant argues in Point I that the record did not support the judge's factual findings that the warrantless search was valid under either the plain exception or the inevitable discovery exception to the warrant requirement. We agree with respect to

the inevitable discovery doctrine exception, but disagree as to the plain view exception.

"Appellate review of a motion judge's factual findings in a suppression hearing is highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016) (citation omitted). "We are obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings." Ibid. (citation omitted). "Those factual findings are entitled to deference because the motion judge, unlike an appellate court, has the 'opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

The inevitable discovery doctrine is an exception to the exclusionary rule. Nix v. Williams, 467 U.S. 431, 444, 104 S. Ct. 2501, 2509, 81 L. Ed. 2d 377, 387 (1984). "If the State can show that 'the information ultimately or inevitably would have been discovered by lawful means . . . the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received.'" State v. Maltese, 222 N.J. 525, 551-52 (2015) (alteration in original) (quoting Nix, supra, 467 U.S. at 444, 104 S. Ct. at 2509, 81 L. Ed. 2d at 387-88), cert. denied, ___ U.S. ___, 136 S. Ct. 1187, 194 L. Ed. 2d 241 (2016)).

In order to invoke the inevitable discovery doctrine in New Jersey, the State must show by clear and convincing evidence that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of such evidence by unlawful means.
>
> [State v. Keaton, 222 N.J. 438, 451 (2015) (quoting State v. Sugar, 100 N.J. 214, 238 (1985) (Sugar II)).]

The State must demonstrate that "had the illegality not occurred, it would have pursued established investigatory procedures that would have inevitably resulted in the discovery of the controverted evidence, wholly apart from its unlawful acquisition." Sugar II, supra, 100 N.J. at 240. "[T]he central question to be addressed in invoking the inevitable discovery rule is whether that very item of evidence would inevitably have been discovered, not merely whether evidence roughly comparable would have been so discovered." State v. Worthy, 141 N.J. 368, 390 (1995) (citation omitted). However, "the State need not demonstrate the exact circumstances of the evidence's discovery . . . . It need only present facts sufficient to persuade the court, by a clear and convincing standard, that the [evidence] would be discovered."

<u>Maltese</u>, <u>supra</u>, 222 <u>N.J.</u> at 552 (alterations in original) (quoting <u>State v. Sugar</u>, 108 <u>N.J.</u> 151, 158 (1987)).

Neither Walsh nor Hennessey, the State's only witnesses at the suppression hearing, testified that the police would have towed and inventoried defendant's car and pursued proper procedures to discover the handgun by independent lawful means. Because the State presented no evidence, let alone clear and convincing evidence, to invoke the inevitable discovery doctrine, it was error to apply the doctrine in this case.

We reach a different conclusion as to the plain view exception. The plain view exception has three elements:

> (1) the police officer must be lawfully in the viewing area; (2) the officer has to discover the evidence inadvertently, meaning that he did not know in advance where evidence was located nor intend beforehand to seize it; and (3) it has to be immediately apparent to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure.[2]
>
> [<u>State v. Reininger</u>, 430 <u>N.J. Super.</u> 517, 535-36 (App. Div.) (quoting <u>State v. Bruzzese</u>, 94 <u>N.J.</u> 210, 236 (1983), <u>cert. denied</u>, 465 <u>U.S.</u> 1030, 104 <u>S. Ct.</u> 1295, 79 <u>L. Ed.</u> 2d 695 (1984)), <u>certif. denied</u>, 216 <u>N.J.</u> 367 (2013).]

---

[2] In <u>Gonzales</u>, <u>supra</u>, 227 <u>N.J.</u> at 83, our Supreme Court held prospectively "that an inadvertent discovery of contraband or evidence of a crime is no longer a predicate for a plain-view seizure."

These three elements were satisfied here.  Hennessey, whose testimony the judge found credible, saw defendant's car prior to the crash and knew there had been an armed robbery.  He arrived at the crash scene within thirty seconds and saw the front doors and trunk were open.  Hennessey looked into the open trunk and saw the butt of a handgun in plain view.  Neu, whose testimony the judge rejected, could not rule out the possibility that the trunk opened during the crash.

The evidence confirms that Hennessey was lawfully in the viewing area; discovered the handgun inadvertently in the open trunk in plain view; and it was immediately apparent to him that the handgun was evidence of a crime or otherwise subject to seizure.  Accordingly, we discern no reason to reverse the judge's application of the plain view exception to the warrant requirement.

II.

Defendant challenges his sentence in Point IV.  He does not dispute he was eligible for an extended-term sentence pursuant to N.J.S.A. 2C:44-3(a).  Rather, relying on State v. Dunbar, 108 N.J. 80 (1987), he argues that the judge improperly double counted his criminal record in finding him eligible for an extended-term sentence and in finding aggravating factors N.J.S.A. 2C:44-1(a)(3)

11

and (6)[3] to increase the base term.  Defendant also argues that the judge was biased and improperly relied on unproven facts and crimes for which he was acquitted.

We review a judge's sentencing decision under an abuse of discretion standard.  State v. Fuentes, 217 N.J. 57, 70 (2014). As directed by the Court, we must determine whether:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.
>
> [Ibid.  (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

We discern no abuse of discretion in defendant's sentence.

Defendant's reliance on Dunbar is misplaced.  There, the Court noted:

> [t]he defendant's prior record of conviction has been taken into account in deciding whether to impose an extended term and presumably would not have the same qualitative weight in grading the range of the extended sentence.  But other aspects of the defendant's record . . . will be relevant factors in adjusting the base extended term.
>
> [Dunbar, supra, 108 N.J. at 91-92.]

---

[3]  "The risk that the defendant will commit another offense[;]" and "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted[.]"

Thus, if a defendant only has one prior conviction, and the court used that conviction to justify an extended term, that same prior conviction cannot be used to extend the base term. See State v. Vasquez, 374 N.J. Super. 252, 267 (App. Div. 2005).

Defendant has an extensive criminal record that includes the following convictions that occurred within ten years of the robbery:[4]

> August 26, 1998: third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7); fourth-degree simple assault, N.J.S.A. 2C:12-1(b)(5);
>
> November 5, 1998: third-degree distributing a controlled dangerous substance (CDS) within 1,000 feet of school property, N.J.S.A. 2C:35-7; third-degree unlawful possession of an imitation firearm, N.J.S.A. 2C:39-4(e);
>
> December 15, 1998: third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b);
>
> December 18, 2002: federal charges of counterfeiting and uttering counterfeit securities or obligations;
>
> April 6, 2003: third-degree conspiracy to distribute a CDS, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-5(b)(3);
>
> January 12, 2004: third-degree distributing a CDS within 1,000 feet of school property, N.J.S.A. 2C:35-7; and
>
> March 15, 2004: third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1).

---

[4] The robbery occurred on April 17, 2007.

Only two of these convictions were necessary to support an extended-term sentence. All other convictions can be considered "other aspects of the defendant's record," Dunbar, supra, 108 N.J. at 92, and provide a sufficient basis for the imposition of a maximum base term. Defendant's criminal record contains enough separate convictions to warrant both an extended term as well as an elevated base term.

We have considered defendant's remaining sentencing argument and conclude it is without sufficient merit to warrant discussion. R. 2:11-3(e)(2). We are satisfied that the judge did not violate the sentencing guidelines and the record amply supports her findings on aggravating and mitigating factors. The sentence is clearly reasonable and does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4703-13T3